**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

| | |
|---|---|
| **Chambers of** | **101 West Lombard Street** |
| **Douglas R. Miller** | **Baltimore, Maryland 21201** |
| **United States Magistrate Judge** | **MDD_DRMChambers@mdd.uscourts.gov** |
| | **(410) 962-7770** |

June 16, 2026

LETTER TO ALL COUNSEL OF RECORD

Re:   *Shutina F. v. Frank Bisignano, Commissioner, Social Security Administration*
        Civil No. 25-3528-DRM

Dear Counsel:

On October 27, 2025, Plaintiff Shutina F. ("Plaintiff") petitioned this Court to review the Social Security Administration's ("SSA's" or "Commissioner's" or "Defendant's") final decision to deny Plaintiff's claim for Social Security benefits. ECF No. 1. This case was then referred to me with the parties' consent. *See* 28 U.S.C. § 636; Loc. R. 301. I have considered the record in this case (ECF No. 8) and the parties' briefs (ECF Nos. 10, 12 and 13). I find that no hearing is necessary. *See* Loc. R. 105.6. The Court must uphold the decision of the SSA if it is supported by substantial evidence and if the SSA employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will REVERSE the Commissioner's decision and REMAND the case for further consideration. This letter explains why.

## I.   PROCEDURAL BACKGROUND

Plaintiff filed a Title II application for Disability Insurance Benefits ("DIB") on April 28, 2023, and a Title XVI application for Supplemental Security Income ("SSI") benefits on May 1, 2023, alleging the same disability onset date in both applications of June 2, 2010, subsequently amended to August 4, 2023. Tr. 17, 42, 167, 170. Plaintiff's claims were denied initially and on reconsideration. Tr. 17. On January 21, 2025, an Administrative Law Judge ("ALJ") held a hearing. Tr. 17-32. Following the hearing, on January 29, 2025, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act, 42 U.S.C. §§ 301 et seq., during the relevant time frame. Tr. 32. On September 23, 2025, the Appeals Council denied Plaintiff's request for review, Tr. 1-6, so the ALJ's decision constitutes the final, reviewable decision of the SSA. *Sims v. Apfel*, 530 U.S. 103, 106–07 (2000); *see also* 20 C.F.R. § 422.210(a).

## II.   THE ALJ'S DECISION

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). The ALJ is required to evaluate a claimant's disability determination using a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920. "Under this

*Shutina F. v. Frank Bisignano*
Civil No. 25-3528-DRM
June 16, 2026
Page 2

process, an ALJ evaluates, in sequence, whether the claimant: '(1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to [their] past relevant work; and (5) if not, could perform any other work in the national economy.'" *Kiser v. Saul*, 821 F. App'x 211, 212 (4th Cir. 2020) (citation omitted) (quoting *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012)).

Here, at step one, the ALJ determined that Plaintiff had "not engaged in substantial gainful activity since August 4, 2023, the alleged onset date." Tr. 20. At step two, the ALJ found that Plaintiff suffered from the severe impairments of: "osteopenia, breast cancer, status post; obesity; diabetes mellitus, type II; iron deficiency anemia, major depressive disorder, and anxiety disorder." Tr. 20. The ALJ also determined that Plaintiff suffered from the non-severe impairments of "bilateral oophorectomy; hypertension; hyperlipidemia; and gastric bypass, status-post." Tr. 20. At step three, the ALJ determined that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Tr. 21. The ALJ also determined that Plaintiff retained the residual functional capacity ("RFC") to perform:

> light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can only occasionally climb ramps and stairs. Never ladders, ropes, and scaffolds. The claimant can occasionally balance, stoop, kneel, crouch and crawl. The claimant can tolerate occasional exposure to noise and lights. She can frequently finger, handle and reach. The claimant can understand, remember and carry out simple instructions, not at a production pace. The claimant can make simple, work-related decisions. She can tolerate few changes in a routine work setting. The claimant can frequently interact with supervisors and co-workers. She can occasionally perform tandem work. The claimant can occasionally interact with the public.

Tr. 24. At steps four and five, the ALJ determined that Plaintiff had no past relevant work but could perform jobs that existed in significant numbers in the national economy, such as marker, mail clerk (non-postal), and shipping and receiving weigher. Tr. 30-31. Therefore, the ALJ concluded that Plaintiff was not disabled. Tr. 32.

### III.   LEGAL STANDARD

The scope of the Court's review is limited to determining whether substantial evidence supports the ALJ's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the [ALJ] . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). It is "more than a mere scintilla but may be somewhat less than a preponderance." *Id.* In conducting the "substantial evidence" inquiry, the Court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained their findings and rationale in crediting the evidence. *See, e.g.*, *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir.

*Shutina F. v. Frank Bisignano*
Civil No. 25-3528-DRM
June 16, 2026
Page 3

1997); *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983) ("Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the [ALJ].").

## IV.    ANALYSIS

On appeal, Plaintiff makes two arguments. This opinion focuses on Plaintiff's second argument, that the ALJ used a "vague" restriction that was not defined in the hypothetical to the vocational expert ("VE") and then formulated an RFC with the same restriction. ECF No. 10 at 10-12. Specifically, in the hypothetical to the VE, the ALJ required that Plaintiff "cannot work at a production pace, as defined in the SCO,"[1] and the RFC includes the restriction that Plaintiff cannot work "at a production pace." *Id.* at 11-12; Tr. 24, 53. Plaintiff argues that the ALJ failed to define the restriction "production pace," which is vague, that this does "not allow for a reviewing court to understand Plaintiff's vocational limitations," and it fails "to incorporate Plaintiff's moderate limitations in concentration, persistence and pace." *Id.* at 11.

In response, the Commissioner argues that the Court can trace the ALJ's reasoning, that the ALJ's decision "permits meaningful review," that courts have previously found the restriction sufficient to accommodate moderate limitations such as Plaintiff's, that the ALJ provided the "necessary context," and that Plaintiff did not show she required greater restrictions. ECF No. 12 at 11-15. In reply, Plaintiff argues that "numerous courts" have remanded based on this issue and that the cases cited by Defendant are distinguishable. ECF No. 13 at 6-7.

In *Thomas v. Berryhill*, the Fourth Circuit found that an ALJ's RFC limitation excluding work that "require[d] a production rate or demand pace" prevented meaningful judicial review because the ALJ failed to explain what those phrases meant. 916 F.3d 307, 312 (4th Cir. 2019), *as amended* (Feb. 22, 2019). With "production rate" and "demand pace" left undefined, the court concluded that it was "difficult, if not impossible" to determine "whether their inclusion in [the] RFC is supported by substantial evidence." *Id*. Without deciding whether the RFC itself was substantively correct, the court remanded for "a clearer window into" the ALJ's reasoning. *Id*. at 313, n.5.

Although the court in *Thomas* identified additional grounds for remand, later decisions have relied solely on the failure to define ambiguous RFC terms as sufficient justification for reversal. *See Perry v. Berryhill,* 765 F. App'x 869, 873 (4th Cir. 2019) ("Because the ALJ's failure to explain the meaning of 'non-production oriented work setting' requires us 'to guess about how [she] arrived at [her] conclusions' and leaves us 'uncertain as to what [she] intended,' we conclude that her assessment is 'lacking in the analysis needed for us to review meaningfully [her] conclusions'") (quoting *Mascio v. Colvin*, 780 F.3d 632, 636–37 (4th Cir. 2015)).[2] *See also, e.g.,*

---

[1] "SCO" refers to U.S. Dep't of Labor, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* (1993).

[2] Unpublished Fourth Circuit opinions are "cited for the persuasiveness of their reasoning, not for any precedential value." *Ortiz v. Ben Strong Trucking, Inc.*, 624 F. Supp. 3d 567, 580 (D. Md. 2022).

*Shutina F. v. Frank Bisignano*
Civil No. 25-3528-DRM
June 16, 2026
Page 4

*Linger v. Comm'r of Soc. Sec.*, No. 22-2192, 2025 WL 40548 (4th Cir. Jan. 7, 2025) (the phrase "no fast paced production requirements such as assembly line work or piecemeal quotas," was not an adequate description because "there [was] uncertainty as to the intended scope of the limitation, and such uncertainty preclude[d] meaningful review as to whether there is a logical bridge between the evidence in the record and the ALJ's conclusion."); *Adrian H. v. Comm'r, Soc. Sec. Admin.*, No. SAG-20-3268, 2022 WL 112033, at *1 (D. Md. Jan. 12, 2022) (remanding where an "ALJ presented the VE with a hypothetical including 'no fast pace or strict production requirements,' with no further definition of those terms"); *Trena Sue Y. v. Kijakazi*, No. DLB-20-1075, 2021 WL 4034264, at *4 (D. Md. Sept. 3, 2021) (remanding where RFC limited plaintiff to work "requiring no fast paced production," which the court analogized to the terms in *Thomas* and *Perry* "both in form and defect"); *Geneva W. v. Comm'r, Soc. Sec. Admin.*, No. SAG-18-1812, 2019 WL 3254533, at *3 (D. Md. July 19, 2019) ("First, while the phrase 'production rate pace' is used in an appendix to the DOT, a definition is not provided. Second, the term 'production pace or strict production quotas' is directly analogous to the term deemed problematic in *Thomas*, and the Court cannot ascertain how the inclusion of the word 'strict' would cure the problem identified by the Fourth Circuit.")[3]; *Nora P. v. Comm'r Soc. Sec.*, No. SAG-18-1604, 2019 U.S. Dist. LEXIS 68383, at *4-5 (D. Md. Apr. 23, 2019) (remand warranted where RFC failed to define phrase "no fast pace or strict production requirements.").

Here, the RFC term "production pace," Tr. 33, is "analogous to the terms in *Thomas* ('production rate' or 'demand pace') and *Perry* ('non-production oriented work setting'), both in form and defect." *Trena Sue Y.*, 2021 WL 4034264, at *4. Indeed, this Court has recently remanded very similar formulations for the same reasons. *Chad H. v. Bisignano*, No. DRM-25-0380, 2026 WL 483338, at *3-*5 (D. Md. Feb. 20, 2026) ("specific production rates"); *Lauren E. v. Bisignano*, No. DRM-24-03065, 2026 WL 319107, at *4 (D. Md. Feb. 6, 2026) ("production pace" and "production pace as defined in the SCO"); *Tai-Shan H. v. Bisignano*, No. DRM-25-2642, 2026 WL 1279106, at *4 (D. Md. May 11, 2026) ("production pace" and "production pace as defined in the SCO").

---

[3] The term "production rate pace" appears in Appendix C to the Department of Labor's *Dictionary of Occupational Titles* ("DOT"), in a section enumerating three situations in which occupations that would otherwise be classified as "sedentary work" (because the amount of weight lifted is negligible) instead qualify as "light work." The third such situation is: "when the job requires working at a production rate pace entailing the constant pushing and/or pulling of materials even though the weight of those materials is negligible." U.S. Dep't of Labor, *Dictionary of Occupational Titles*, Appendix C — Components of the Definition Trailer, 1991 WL 688702 (4th ed. 1991). The discussion goes on to explain: "NOTE: The constant stress and strain of maintaining a production rate pace, especially in an industrial setting, can be and is physically demanding of a worker even though the amount of force exerted is negligible." *Id.* However, no definition is given of "production rate pace," and the term's use in this narrow context does not elucidate a general meaning.

*Shutina F. v. Frank Bisignano*
Civil No. 25-3528-DRM
June 16, 2026
Page 5

For the same reasons, it is difficult for the Court to ascertain whether the RFC finding in this case was supported by substantial evidence, *see Thomas*, 916 F.3d at 311-12.

The addition of the phrase "as defined in the SCO" does not clarify the hypothetical posed to the VE. The Department of Labor's *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* (SCO) contains a single instance of the term "production rate pace," nearly identical to its usage in the DOT, discussed *supra*:

> Even though the weight lifted may be only a negligible amount, a job/occupation is rated Light Work when it requires: . . . (3) working at a production rate pace while constantly pushing or pulling materials even though the weight of the materials is negligible. (The constant stress and strain of maintaining a production rate pace, especially in an industrial setting, can be and is physically demanding of a worker even though the amount of force exerted is negligible.)

SCO, Appendix C – Physical Demands.

Once again, no definition is given of "production rate pace," and the term's use in this narrow context does not elucidate a general meaning. It is therefore difficult to ascertain if the VE could know whether a person limited to work not involving a "production pace as defined in the SCO" could perform the job functions of marker, mail clerk (non-postal), and shipping and receiving weigher.

Because the case is being remanded on other grounds, I need not address Plaintiff's other argument. On remand, the ALJ is welcome to consider that argument and make any required adjustments to the opinion. Additionally, in remanding for further explanation, the Court expresses no opinion as to whether the ALJ's conclusion that Plaintiff is not entitled to benefits is correct.

## V.    CONCLUSION

For the reasons set forth herein, pursuant to sentence four of 42 U.S.C. § 405(g), the SSA's judgment is REVERSED due to inadequate analysis. The case is REMANDED for further proceedings in accordance with this opinion. The clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be docketed as a Memorandum Opinion. A separate implementing Order follows.

Sincerely,

/s/

Douglas R. Miller
United States Magistrate Judge